UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

JOHN J. SCACCIA,

    Plaintiff,

vs.

LYFT, INC.,

    Defendant.

Case No. 3:21-cv-29

District Judge Michael J. Newman
Magistrate Judge Peter B. Silvain, Jr.

---

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS COUNTS TWO, THREE, FIVE, SEVEN, AND NINE OF PLAINTIFF'S COMPLAINT (DOC. NO. 6)**

---

This *pro se* case is before the Court on Defendant Lyft, Inc.'s ("Lyft") partial motion to dismiss. Doc. No. 6. Plaintiff filed an opposition memorandum to the motion to dismiss (Doc. No. 10) and Defendant replied (Doc. No. 11). This motion is now ripe for review.

**I.**

Accepting Plaintiff's allegations as true, *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), reveals the following. Plaintiff drove for Lyft, a ridesharing company, beginning in August 2017. Doc. No. 3 at PageID 42–43. Allegedly, Plaintiff's riders complained on two separate occasions to Lyft that he was intoxicated while driving -- once in September 2017, and once in January 2018. *Id.* at PageID 43, 48. Each time, Lyft promptly terminated Plaintiff's privileges as a driver. *Id.* at PageID 44, Doc. No. 6-1 at PageID 67. But after Lyft's actions, each time Plaintiff immediately went to a police station where he obtained a police report documenting that he did not appear intoxicated. Doc. No. 3 at PageID 45. Lyft reinstated Plaintiff's privileges soon after receiving each report. *Id.* at PageID 43–46. However, on January 5, 2018, a third customer complained to Lyft about Plaintiff's intoxication. *Id.* at PageID 46. Despite Plaintiff's protests, Lyft revoked

Plaintiff's driving privileges, thus ending their relationship. This suit followed in December 2020. *Id.* at PageID 1, 49.

Interestingly, this is not Plaintiff's first case against a rideshare company. He sued Uber in November 2018, alleging that passengers falsely reported his intoxication, which prompted Uber to improperly deactivate his account. *See Scaccia v. Uber Techs., Inc.*, No. 3:18-cv-418, 2019 WL 2476811, at *1 (S.D. Ohio June 13, 2019).

In the present case, Defendant's motion to dismiss under Fed. R. Civ. P. 12(b)(6) concerns the following claims: (1) promissory estoppel; (2) unjust enrichment; (3) breach of fiduciary duty; (4) interference with business and/or contractual relationship; and (5) discrimination. Doc. No. 6-1 at PageID 66.

## II.

The Court assumes a complaint's factual veracity under Rule 12(b)(6). *See Iqbal*, 556 U.S. at 678. To survive dismissal, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This requires a complaint "to 'state a claim to relief that is plausible on its face.'" *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Watkins v. Healy*, 986 F.3d 648, 660 (6th Cir. 2021) (quoting *Iqbal*, 556 U.S. at 678). Essentially, a complaint must have more than "naked assertion[s]" without facts. *Twombly*, 550 U.S. at 557.

While *pro se* parties must satisfy basic pleading requirements, *Wells v. Brown,* 891 F.2d 591, 594 (6th Cir. 1989), their pleadings are liberally construed and "held to less stringent standards" than lawyers. *Erickson v. Pardus,* 551 U.S. 89, 94 (2007). Nevertheless, *pro se* complaints still "must contain sufficient factual matter, accepted as true, to state a claim to relief

that is plausible on its face." *Iqbal,* 556 U.S. at 678; *see also Hill v. Lapin*, 630 F.3d 468, 472 (6th Cir. 2010).

### III.

Because Plaintiff's promissory estoppel, unjust enrichment, breach of fiduciary duty, tortious interference, and discrimination claims all fail under Ohio law,[1] the Court grants Defendant's partial motion to dismiss.

### A. Promissory Estoppel and Unjust Enrichment

A plaintiff can successfully allege promissory estoppel if he shows "(1) a clear and unambiguous promise; (2) reliance on that promise; (3) reliance that was reasonable and foreseeable; and (4) damages caused by that reliance." *Padula v. Wagner*, 37 N.E.3d 799, 811 (Ohio Ct. App. 2015) (citing *Rigby v. Fallsway Equip. Co.*, 779 N.E.2d 1056, 1061 (Ohio Ct. App. 2002)). Likewise, a successful unjust enrichment claim requires "(1) a benefit conferred by a plaintiff upon a defendant; (2) knowledge by the defendant of the benefit; and (3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment." *Id.* at 813 (cleaned up) (quoting *Hambleton v. R.G. Barry Corp.*, 465 N.E.2d 1298 (Ohio 1984)). Both claims fail, however, when "an express contract covers the same subject." *Id.* "Where parties enter into an enforceable written contract and 'merely dispute its terms, scope, or effect, one party cannot recover' in quasi-contract." *XPX Armor & Equip., Inc. v. SkyLIFE Co.*, 158 N.E.3d 1024, 1047 (Ohio Ct. App. 2020) (quoting *Kahler v. Cincinnati, Inc.*, No. C-140407, 2015 WL 1256323, at *4 (Ohio Ct. App. 2015)).

Plaintiff claims that Lyft not only "breached its agreement with Plaintiff," but also that

---

[1] Sitting in diversity, federal courts apply "the choice of law rules and substantive law of the forum state." *Smith v. Gen. Motors, LLC*, 988 F.3d 873, 879 (6th Cir. 2021) (quoting *CenTra, Inc. v. Estrin*, 538 F.3d 402, 409 (6th Cir. 2008)).

3

Lyft's emails prior to Plaintiff's employment made promises upon which he relied, and that Lyft retained benefits from Plaintiff's employment. Doc No. 3 at PageID 50, 51, 52.

Lyft's Terms of Service ("TOS") is a "legally binding agreement" between the driver and Lyft.[2] Doc. 6-2 at PageID 81. The TOS has a modification clause, specifying that disputes over its terms or changes to it must be settled in arbitration. *Id.* at PageID 81–82, 93. Both Plaintiff's claims of promissory estoppel and unjust enrichment fall under this clause, and, more generally, under the contract -- an express agreement between Plaintiff and Lyft. *See Padula*, 37 N.E.3d at 813 (dismissing promissory estoppel and unjust enrichment claim from employee to employer because the employment agreement covered both claims); *Kahler*, 2015 WL 1256323, at *4 (affirming ruling finding that employee's promissory estoppel claim was invalid because claim concerned written agreement). Thus, the Court **DISMISSES** Counts Two and Three of Plaintiff's complaint.

   B.  **Breach of Fiduciary Duty**

"Under Ohio law, there is generally no fiduciary relationship between an independent contractor and his employer unless both parties understand that the relationship is one of special trust and confidence." *Schulman v. Wolske & Blue Co., L.P.A.*, 708 N.E.2d 753, 758 (Ohio Ct. App. 1998). The Ohio Supreme Court held only that, in certain instances mostly regarding banks and lenders, a fiduciary duty might arise if there are "special circumstances." *Groob v. KeyBank*, 843 N.E.2d 1170, 1175 (Ohio 2006). But both parties must recognize their relationship as one of special trust. *Antioch Co. Litig. Trust v. Morgan*, No. 3:10-cv-156, 2013 WL 3976673, at *9 (S.D.

---

[2] The Court may consider Lyft's TOS, an express contract, on the motion to dismiss without converting it to a motion for summary judgment because Plaintiff's claim refers to his contract with Lyft and the claims revolve around their contractual relationship. *See DBI Investments, LLC v. Blavin*, 617 F. App'x 374, 376 (6th Cir. 2015) (quoting *Greenberg v. Life Ins. Co. of Va.*, 177 F.3d 507, 514 (6th Cir. 1999)); *QQQ, Inc. v. Hewlett-Packard Co.*, 258 F. Supp. 2d 718, 721 (E.D. Mich. 2003).

Ohio Aug. 2, 2013) (quoting *Anchor v. O'Toole*, 94 F.3d 1014, 1023–24 (6th Cir. 1996)). Lyft argues that since Plaintiff was an independent contractor driving for Lyft, as the TOS indicates, no fiduciary relationship arose. Doc. Nos. 6-1 at PageID 74, 6-2 at PageID 99. Plaintiff argues that his claim ought to survive because there are special circumstances worthy of discovery, alleging that (1) Lyft withheld money and (2) undertook a duty when investigating the passengers' reports. Doc. No. 10 at PageID 122.

Both circumstances Plaintiff identifies fail to create a fiduciary relationship under Ohio law. First, the exchange of money alone does not create a fiduciary relationship. *See Antioch*, 2013 WL 3976673, at *9–10; *Smith v. Boston Mut. Life Ins. Co.*, No. C-120668, 2013 WL 3148719, at *2 (Ohio Ct. App. June 19, 2013) (dismissing complaint where only relationship alleged was between an independent contractor and his employer); *Ohio Civ. Serv. Emp. Ass'n., AFRSCME Local 11, AFL-CIO v. State Emp. Relations Bd.*, 759 N.E.2d 794, 799 (Ohio Ct. App. 2001) ("When an employee's duties are routine, the employer is not a fiduciary. For example, the mere handling of money or balancing an account does not, by itself, demonstrate a fiduciary relationship"). Second, Lyft's actions -- to investigate allegations that Plaintiff drove while intoxicated -- were routine rather than creating special circumstances. Contra *Ohio Civ. Serv. Emp. Ass'n*, 759 N.E.2d at 799 (finding that, within the special trust and confidence of public employee's role, investigation using privileged information gave rise to fiduciary relationship). Indeed, Plaintiff's complaint alleges no special circumstances that Lyft recognized would create a fiduciary duty beyond the traditional relationship between an independent contractor and employer. *See Jean v. Works*, No. 1:04CV1904, 2006 WL 1966644, at *3 (N.D. Ohio July 5, 2006) (dismissing fiduciary duty claim premised on employer's relationship to independent contractor). Thus, the Court **DISMISSES** Count Four of Plaintiff's complaint.

**C. Tortious Interference Claim**

To prove a tortious interference claim, Plaintiff must show "(1) the existence of a contract, (2) the wrongdoer's knowledge of the contract, (3) the wrongdoer's intentional procurement of the … breach, (4) the lack of justification, and (5) resulting damages." *Fred Siegel Co., L.P.A. v. Arter & Hadden*, 707 N.E.2d 853, 858 (Ohio 1999). "The main distinction between tortious interference [in contract] and tortious interference [in business] is that interference with a business relationship includes intentional interference with prospective contractual relations, not yet reduced to a contract." *Diamond Wine & Spirits, Inc. v. Dayton Heidelberg Distrib. Co.*, 774 N.E.2d 775, 780–781 (Ohio Ct. App. 2002). It is axiomatic that "a party cannot be sued in tort for interfering with its own performance." *Contadino v. Tilow*, 589 N.E.2d 48, 52 (Ohio Ct. App. 1990).

Plaintiff's complaint alleges that Lyft informed others "with whom Plaintiff had business relations" that he was fired for intoxication. Doc. 3 at PageID 58. Yet Plaintiff does not plausibly show that business relations exist. *Contra Miami Valley Mobile Health Servs., Inc. v. ExamOne Worldwide, Inc.*, 852 F. Supp. 2d 925, 942 (S.D. Ohio 2012) (denying dismissal of tortious interference claim because Plaintiff plausibly alleged that contract existed). Certainly, Plaintiff cannot allege that Lyft's interference with its own contract with him was tortious interference. *See Contadino*, 589 N.E.2d at 52. But the threadbare assertion that Plaintiff had "business relations" with others is not enough to withstand a motion to dismiss. *See, e.g., Michaels v. Grant County Animal Shelter*, No. 18-121-DLB-CJS, 2019 WL 12105674, at *2–3 (E.D. Ky. July 8, 2019) (citing *Milacron, LLC v. Advanced Fluids, Inc.*, No. 1:13-cv-364, 2013 WL 5722795, at *5 (S.D. Ohio Oct. 21, 2013)) (dismissing tortious interference claim because it was missing essential element of tortious interference claim). Thus, the Court **DISMISSES** count seven of Plaintiff's complaint.

**D. Discrimination Claim**

Plaintiff originally pleaded discrimination under Ohio Revised Code Chapter 4112. Doc.

6

No. 3 at PageID 58–59. He seems to have abandoned this argument, as he did not contest Lyft's arguments in its motion to dismiss. *See* Doc. No. 12 at PageID 138–39. "Claims left to stand undefended against a motion to dismiss are deemed abandoned." *Bazinski v. JPMorgan Chase Bank, N.A.*, No. 13-14337, 2014 WL 1405253, at *2 (E.D. Mich. Apr. 11, 2014) (collecting cases). Thus, count nine of Plaintiff's complaint is **DISMISSED**.

## IV.

The Court thus **GRANTS** Defendant's partial motion to dismiss, and **DISMISSES WITH PREJUDICE** counts two, three, five, seven, and nine of Plaintiff's complaint. This leaves remaining the following counts: complaint count one (breach of contract); count four (negligent representation); count six (fraud); and count eight (intentional infliction of emotional distress).

**IT IS SO ORDERED.**

  September 24, 2021                                s/Michael J. Newman
                                                          Hon. Michael J. Newman
                                                          United States District Judge